# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

TROY K. SCHEFFLER                                                        PLAINTIFF

v.                                                  CIVIL ACTION NO. 3:14-CV-373-H

ALEX LEE *et al*.                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Troy K. Scheffler, proceeding *pro se*, filed a complaint alleging various federal constitutional claims and state law claims (DN 1). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the City of Louisville will be dismissed as a Defendant from this action, and the claims that Defendant Lee violated Plaintiff's First and Fourteenth Amendment rights to freedom of speech and to petition the government for redress of grievances will be dismissed from this action. The remaining federal-constitutional claims and state-law claims will proceed.

## I. STATEMENT OF THE CASE

Plaintiff brings this action against five Defendants: (1) Alex Lee, a Louisville/Jefferson County Metro police officer;[1] (2) Michael Carroll, a Louisville/Jefferson County EMT; (3) Frederick Asset Protection LLC (FAP); (4) Louisville/Jefferson County Metro Government (Louisville Metro); and (5) the City of Louisville. He sues Defendants Lee and Carroll only in their individual capacities. As relief, Plaintiff seeks "[g]eneral damages," punitive damages,

---

[1] In the "Venue and Parties" section of his complaint, Plaintiff states that Defendant Lee is employed by both Louisville Metro and Frederick Asset Protection LLC. Plaintiff does not state who Defendant Lee was working for when the alleged events about which he complains occurred, although he repeatedly refers to him in the complaint as a police officer.

"statutory damages," "[c]osts and disbursements," reasonable attorney fees, and "[a]ll other legal, equitable, or declaratory relief . . . ."

Plaintiff states that he "was adjudicated on 10-17-2011 with agoraphobia with panic disorder and later placed on permanent disability by the Social Security Administration." He represents that he resided at the Galt House in Louisville, Kentucky, from May 16-20, 2013. According to Plaintiff, on May 18, 2013, after being out searching for an intoxicated friend, Plaintiff returned "[a]t approximately 12:58 am" to the Galt House and "entered the front desk lobby." Plaintiff states that he was having difficulty with anxiety at the time. He also states that he was confused as to which side of the hotel his room was located on. According to Plaintiff, a security officer, Jordan Keister, informed him that his room was across the street in the other tower. Plaintiff states that he went to the other tower, and he noticed Mr. Keister behind him. According to Plaintiff, Mr. Keister followed Plaintiff as he walked to his room, and he "mock[ed] and mimicked" Plaintiff's movements. Plaintiff represents that he demanded that Mr. Keister take him to his supervisor, but Mr. Keister stated that he had none that evening. Plaintiff insisted that there must be some manager he could speak to, so Mr. Keister led Plaintiff back to the hotel lobby. According to Plaintiff, Mr. Keister informed Plaintiff that he would retrieve a supervisor for him.

Plaintiff states that Defendant Lee was at the concierge desk at the time and "inquired why the Plaintiff returned and began to demand the Complainant's identification." Plaintiff refused to provide his identification and informed Defendant Lee that this was not a police matter, but a complaint about the hotel. Plaintiff states that Defendant Lee threatened to take Plaintiff to jail if he did not show his identification. Plaintiff represents that a hotel supervisor, Tim Howard, arrived and spoke with Plaintiff. According to Plaintiff, Defendant Lee

2

"interjected himself into the situation continually interrupting the conversation between Plaintiff and Howard." Plaintiff did not produce any identification and inquired of Defendant Lee as to the charge he was seeking identification for. At approximately 1:12 a.m., Plaintiff represents, he asked Defendant Lee whether he was being detained and not free to leave. According to Plaintiff, Defendant Lee "affirmed." Plaintiff states that he called 911 to request that a sheriff's deputy be sent to mediate the situation, but "dispatch" stated they could only send a supervisor. Plaintiff states that he requested a supervisor be sent to the scene. Plaintiff believes that a supervisor radioed Defendant Lee about this situation, and Defendant Lee informed the supervisor that Plaintiff did not believe Defendant Lee was a police officer. Plaintiff contends that this was a known falsehood made to deceive and cancel Plaintiff's request for a supervisor. Defendant Lee, states Plaintiff, "then stated all he was asking is who Plaintiff was staying with in room 1005." Plaintiff responded, "It doesn't matter."

On the sidewalk in front of the entrance to the hotel, Plaintiff was surrounded by Defendant Lee "and other hotel security." According to Plaintiff, they harassed him and told him he was on private property. Plaintiff states that in response he began walking further down the sidewalk and informed Defendant Lee what he was doing. Plaintiff states that Defendant Lee "continued his harassment and intimidation of the Plaintiff and again demanded the surrender of his identification." Plaintiff again asked Defendant Lee what "charge he would be arrested for if he refused to give his ID." This time, according to Plaintiff, Defendant Lee informed Plaintiff, "[a]lcohol intoxication." Plaintiff contends that Defendant Lee fabricated this charge in retaliation for Plaintiff asking "questions peacefully, but 'being uncooperative' according to Lee." According to Plaintiff, he informed Defendant Lee that he "was peacefully just walking down the sidewalk." At this point, according to Plaintiff, Defendant Lee "assaulted and battered

3

Plaintiff as he threw him against a car and Plaintiff's phone flew out of his hand." Plaintiff states that Defendant Lee placed handcuffs on him, and that the handcuffs were "overly tightened on Plaintiff's wrists . . . ." Plaintiff states that he told Defendant Lee that the handcuffs were too tight on numerous occasions.

Thereafter, according to Plaintiff, Defendant Lee placed Plaintiff in the back of his squad car and took Plaintiff's "wallet and prescribed anxiety medication." Plaintiff states that he informed Defendant Lee that he suffered from a panic disorder and needed his medication back, but Defendant Lee refused to return the medication. "While in the squad, Lee turned on his in-car camera and began to play act a false narrative of the incident at the Galt House. During this time and knowing he was recording, Lee claimed that Plaintiff gave him a woman's name as that registered to room 1005." Plaintiff states that this narrative was a lie. According to Plaintiff, after continued interrogation by Defendant Lee, he had a "full blown panic attack and pleaded to be brought to the hospital." Plaintiff states that he informed Defendant Lee that he was having symptoms related to a heart attack. According to Plaintiff, Defendant Lee "informed dispatch that Plaintiff was complaining of panic vs. heart attack." Plaintiff states that he made numerous requests for Defendant Lee to transport him to the hospital, but that Defendant Lee stated he could not do so by himself. Plaintiff contends that Defendant Lee "could have in fact transported Plaintiff." According to Plaintiff, Defendant Lee "intentionally stopped his vehicle in motion which resulted in intentional and extreme emotional and physical distress to Plaintiff."

Plaintiff contends that when "EMS arrived via ambulance," he complained that "his arms were going numb, [he] was having a panic attack, and [he] felt as though he may be having a heart attack." According to Plaintiff, Defendant Carroll instructed him to slow down his breathing because he was hyperventilating. Plaintiff states that Defendant Carroll falsely wrote

4

in his official report that Plaintiff "was suffering 'No apparent distress' upon arrival." Plaintiff states that Defendant Carroll spoke with Defendant Lee "away from the squad." Plaintiff represents that during this conversation Defendant Lee informed Defendant Carroll that Plaintiff had been belligerent and combative, and Defendant Carroll informed Defendant Lee that Plaintiff was not having a panic attack. According to Plaintiff, the demeanor of the paramedics changed toward Plaintiff after the conversation with Defendant Lee. Plaintiff states that Defendant Lee's "influence upon medical personnel frustrated Plaintiff's medical care." Paramedic Albertson, Plaintiff states, probed Plaintiff about his information instead of transporting him to the hospital. Plaintiff states that he continued to refuse to provide his address, but was finally transported to the hospital some six minutes after the EMTs had arrived. According to Plaintiff, he was restrained while in the ambulance. Plaintiff states that he requested his anxiety medication, but Defendant Carroll refused to return it to him. Plaintiff states this was done "in a manner to suggest retaliation for Plaintiff being 'uncooperative.'" According to Plaintiff, Defendant Carroll made false statements about the situation and Plaintiff's behavior in his official report, and Defendant Carroll's and Defendant Lee's reports about the incident were inconsistent. Plaintiff states that he was admitted to the hospital over a half hour after the ambulance arrived at the scene. Plaintiff states that the "intentional delay was dangerous, malicious, retaliatory, and placed Plaintiff in great risk." He further claims the delay caused him "extreme emotional and physical distress."

Plaintiff states that Defendant Lee escorted him inside the hospital. Plaintiff contends that "the aforementioned paramedics forwarded their official report with the aforementioned falsehoods to the hospital's triage nurse . . . ." Plaintiff states that this nurse noted in her record that Plaintiff was not on a "security hold." Plaintiff states that Defendant Lee "continued to

5

spread falsehoods concerning Plaintiff to hospital staff." According to Plaintiff, he was admitted to the hospital "falsely and against his will for 'alcohol intoxication' instead of his only and chief complaint of 'panic attack/heart attack.'" Defendant Lee, Plaintiff represents, demanded a urine specimen from Plaintiff and threatened to obtain one by force if Plaintiff did not cooperate. Plaintiff states that he "was placed on an illegal 'warrantless arrest' by Louisville security based upon being an 'immediate threat of danger to self and/or others.'" Plaintiff states that he was not a danger to himself or others nor was he handcuffed or physically restrained at this point. Defendant Lee, Plaintiff contends, continued to demand a urine specimen, and Plaintiff continued to refuse to provide one. Defendant Lee, according to Plaintiff, would not allow Plaintiff to use the restroom despite Plaintiff's many requests throughout his emergency room stay. According to Plaintiff, his medical record does not support alcohol intoxication or that he was a danger to self or others, but does support that he was having a panic attack. Plaintiff states that he was "released from the security hold by Dr. Raymond Orthober" at 3:00 a.m. and discharged by this same doctor at 3:02 a.m. According to Plaintiff, he signed the discharge instructions under protest because they indicated he had been evaluated for "Acute Alcohol Intoxication." Plaintiff states that a nurse wrote that he was discharged at 3:24 a.m., but "Security states Plaintiff was still held by Lee and the hospital at his bed until after 3:30am." At approximately 3:30 a.m., Plaintiff "urinated in his pants." Plaintiff states that he was given a new pair of socks and "immediately allowed to leave the hospital." After leaving the hospital, "Lee transported Plaintiff to jail with charges of Disorderly Conduct and Alcohol Intoxication." Plaintiff states he was released from jail the evening of May 18, 2013. According to Plaintiff, he was acquitted of all the charges on January 28, 2014.

6

## II. **CLAIMS**

Plaintiff asserts four state-law claims and five[2] federal-constitutional claims in this action. Plaintiff's first state-law claim is for battery. He contends that Defendants Lee and Carroll "intentionally commit[ted] harmful and offensive touching of the Plaintiff." He also seeks to hold Defendants Louisville Metro and FAP liable for battery for the alleged wrongful acts of Defendant Lee on the theory of respondeat superior. Additionally, Plaintiff seeks to hold Defendant Louisville Metro liable for battery for the alleged wrongful acts of Defendant Carroll on the theory of respondeat superior. Plaintiff's second state-law claim is for false imprisonment. He contends that Defendant Lee "willfully seize[d] Plaintiff without consent and without authority of law, and deprived Plaintiff of his liberty of movement." Plaintiff seeks to hold Defendants Louisville Metro and FAP liable for false imprisonment for the alleged wrongful acts of Defendant Lee on the theory of respondeat superior. Plaintiff's third state-law claim is one for malicious prosecution. Regarding this claim, Plaintiff contends that Defendant Lee "intentionally pursued criminal charges without probable cause at the outset . . . ." He brings this claim against Defendant Lee in his individual capacity and against Defendants Louisville Metro and FAP for the alleged wrongful acts of Defendant Lee on the theory of respondeat superior. Plaintiff's fourth state-law claim is for intentional infliction of emotional distress. He brings this claim against Defendant Lee in his individual capacity and against Defendant Louisville Metro for the alleged wrongful acts of Defendant Lee on the theory of respondeat superior.

---

[2] Plaintiff lists these as three claims in his complaint, Claims V-VII; however, they are actually five separate claims.

Plaintiff brings his five federal-constitutional claims pursuant to 42 U.S.C. § 1983. First, Plaintiff contends that Defendant Lee violated his "clearly established right of freedom of speech . . . by intentionally frustrating a 911 dispatch of a supervisor initiated at the request of the Plaintiff and Plaintiff's subsequent arrest." He contends that Defendant Lee's actions violated the First and Fourteenth Amendments. Second, Plaintiff contends that Defendant Lee violated his "clearly established right . . . for redress of grievances by intentionally frustrating a 911 dispatch of a supervisor initiated at the request of the Plaintiff and Plaintiff's subsequent arrest." He contends that these actions also were a violation of his First and Fourteenth Amendment rights. Third, Plaintiff contends that Defendant Lee "searched and seized Plaintiff unreasonably, without warrant, without probable cause, and without lawful exception to the requirement for a search or arrest warrant . . . ." Plaintiff alleges that these actions violated his Fourth and Fourteenth Amendment rights. Fourth, Plaintiff contends that Defendant Lee "inflicted excessive, unreasonable force upon Plaintiff . . . ." Plaintiff alleges that these actions violated his Fourth and Fourteenth Amendment rights. Fifth, Plaintiff's final federal-constitutional claim is brought against Defendants Lee and Carroll and is for false prosecution[3] in violation of the Fourteenth Amendment.

### III. STANDARD OF REVIEW

Upon review under 28 U.S.C. § 1915(e), a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law

---

[3] The Court reads this claim solely as one for false prosecution since Plaintiff has already alleged a false arrest claim. Further, although Plaintiff refers to this claim as one for false prosecution, the claim is more commonly referred to as one for malicious prosecution. The Court will use the more common name.

or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### IV. LEGAL ANALYSIS

*A. Defendant City of Louisville*

Plaintiff lists Louisville Metro and the City of Louisville as two separate Defendants in the caption of his compliant. However, he states in the "Venue and Parties" section of his

9

complaint that the "City of Louisville . . . shall be in effect in this complaint synonymous to Louisville/Jefferson County Metro Government . . . ." In 2003, the City of Louisville government merged with the surrounding Jefferson County government and formed what is now referred to as Louisville/Jefferson County Metro government (Louisville Metro). *See* http://www.louisvilleky.gov. Therefore the separate governmental entity of the City of Louisville no longer exists.

Accordingly, the City of Louisville will be dismissed as a Defendant from this action.

## B. Federal-Constitutional Claims

### 1. Freedom of Speech and Right to Petition the Government Claims

Plaintiff contends that Defendant Lee violated the First and Fourteenth Amendments'[4] rights to freedom of speech and to petition the government for redress of grievances when, according to Plaintiff, he "intentionally frustrate[ed] a 911 dispatch of a supervisor initiated at the request of the Plaintiff and Plaintiff's subsequent arrest." Plaintiff brings this claim against Defendant Lee in his individual capacity only. Plaintiff, in the recitation of the facts of his case, states that during his encounter with Defendant Lee, he called 911 to request that a sheriff's deputy be sent to mediate the situation. According to Plaintiff, "dispatch" stated that only a supervisor could be sent to the scene. Plaintiff believes that a supervisor radioed Defendant Lee about this situation, and Defendant Lee informed the supervisor that Plaintiff did not believe Defendant Lee was a police officer. Plaintiff contends that this was a known falsehood made to deceive and cancel the request Plaintiff made for a supervisor to come and mediate the situation.

---

[4] The First Amendment's freedoms of speech and petition for redress of grievances are made applicable to the States by the Fourteenth Amendment's Due Process Clause. *See Gideon v. Wainwright*, 372 U.S. 335, 341 (1963).

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech . . .or the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. "[A]s a general matter, 'the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002) (citations omitted). Plaintiff fails to state how the First Amendment applies to the factual scenario he presents in this case, and the Court cannot discern how it applies. Plaintiff does not complain about any law or restriction placed upon him nor do the facts he presents indicate his speech or ability to redress the alleged wrongs about which he complains was restricted.

Accordingly, the claims that Defendant Lee violated Plaintiff's First and Fourteenth Amendment rights to freedom of speech and to petition the government for redress of grievances will be dismissed from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 2. *Remaining Federal-Constitutional Claims*

Upon review, the Court will allow the following claims to proceed: (1) Plaintiff's Fourth and Fourteenth Amendment claim against Defendant Lee for unreasonable search and seizure; (2) Plaintiff's Fourth and Fourteenth Amendment claim against Defendant Lee for the use of excessive force; and (3) Plaintiff's Fourteenth Amendment claim against Defendants Lee and Carroll for malicious prosecution in violation of the Fourteenth Amendment.

*C. State-Law Claims*

> Title 28 U.S.C. § 1367(a) provides:
>
> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Plaintiff alleges four state-law claims in this action. Those claims are as follows: (1) a claim for battery against Defendants Lee, Carroll, Louisville Metro, and FAP; (2) a claim for false imprisonment against Defendants Lee, Louisville Metro, and FAP; (3) a claim for malicious prosecution against Defendants Lee, Louisville Metro, and FAP; and (4) a claim for intentional infliction of emotional distress against Defendants Lee and Louisville Metro. The Court will exercise its supplemental jurisdiction over these claims and let them proceed at this point in the litigation.

## V. ORDER

**IT IS ORDERED** that the City of Louisville is **DISMISSED** as a Defendant from this action. **The Clerk of Court is DIRECTED** to remove the City of Louisville as a Defendant from the docket of this action.

**IT IS ORDERED** that Plaintiff's claims for violations of his First and Fourteenth Amendment rights to freedom of speech and to petition the government for redress of grievances are **DISMISSED** from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

**IT IS ORDERED that the following federal-constitutional claims shall proceed:** (1) Plaintiff's Fourth and Fourteenth Amendment claim against Defendant Lee for unreasonable

search and seizure; (2) Plaintiff's Fourth and Fourteenth Amendment claim against Defendant Lee for the use of excessive force; and (3) Plaintiff's Fourteenth Amendment claim against Defendants Lee and Carroll for malicious prosecution.

**IT IS ORDERED that the following state-law claims shall proceed**: (1) the claim for battery against Defendants Lee, Carroll, Louisville Metro, and FAP; (2) the claim for false imprisonment against Defendants Lee, Louisville Metro, and FAP; (3) the claim for malicious prosecution against Defendants Lee, Louisville Metro, and FAP; and (4) the claim for intentional infliction of emotional distress against Defendants Lee and Louisville Metro.

In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action. By separate order the Court will direct service on Defendants. Date:

cc: Plaintiff, *pro se*
    Defendants
    Jefferson County Attorney
4412.003