UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TROY K. SCHEFFLER                                                                    PLAINTIFF

v.                                                       CIVIL ACTION NO. 3:14-CV-00373-CRS

ALEX LEE, ET AL.                                                                   DEFENDANTS

**MEMORANDUM OPINION**

I. Introduction

This matter is before the court on defendants Alex Lee and Michael Carroll's motion for summary judgment. ECF No. 92-1. Plaintiff Troy Scheffler responded. ECF No. 100. Lee and Carroll subsequently replied. ECF No. 104. For the reasons set forth below, the motion for summary judgment will be granted.

II. Factual Background

This case arises from an incident at the Galt House Hotel involving Scheffler, Louisville Metro Police Officer Alex Lee ("Officer Lee"), and Louisville EMS technician Michael Carroll ("EMT Carroll"). On May 16, 2013, Scheffler traveled to Louisville with his friend, Sean Burkett. ECF No. 100-2, p. 16. The two shared a room at the Galt House Hotel, which was registered in Burkett's name. *Id.* The day after their arrival, Scheffler—who suffers from agoraphobia—stayed in the hotel room the majority of the day. *Id.* at 17. However, he left the room later that evening to meet Burkett at Fourth Street Live. *Id.* at 18.

When Scheffler arrived at the front of Fourth Street Live, he was unable to locate Burkett. *Id.* Although the two exchanged multiple calls and texts, Burkett was unable to tell

Scheffler his exact location. *Id.* After over an hour, Scheffler finally found Burkett at the Marquee Bar. *Id.* When Scheffler reunited with Burkett, he realized that his friend was "clearly intoxicated" and suggested that they return to the Galt House. *Id.* On their walk back to the hotel, Burkett stopped at a food vendor. *Id.* at 24. Scheffler waited for a few minutes, but then decided to walk back alone. *Id.*

Scheffler arrived back at the Galt House shortly before 1:00 a.m. and briefly stopped in the lobby to ask which tower his room was located in. *Id.* at 28. A security guard told him that the room was in the opposite tower, and directed him to cross the "pretty bridge" to get there. *Id.* at 29. Scheffler then exited the lobby, crossed the bridge, and went into the opposite tower. *Id.*

Once in the opposite tower, Scheffler got on the elevator. *Id.* A security guard boarded the elevator behind him. *Id.* Scheffler got off the elevator on the tenth floor, and the security guard did as well. *Id.* at 30. At that point, Scheffler turned to the security guard and asked him if he was following him. *Id.* The security guard responded that he was not, but had "a grin on his face." *Id.* Scheffler then turned to walk down the hallway toward his room, and the security guard continued to walk behind him. *Id.* Finally, Scheffler told the security guard that he wanted to speak to his supervisor. *Id.* The security guard told him that he could talk to the hotel manager on duty. *Id.* Scheffler and the security guard then proceeded back to the first floor and across the bridge to the main tower. *Id.*; ECF No. 100-12, 1:05:35.

When they arrived back in the lobby, the security guard told Scheffler to wait by the concierge desk while he went to get the hotel manager. ECF No. 100-2, p. 31; ECF No. 100-12, 1:06:37. Officer Lee, who was working off-duty at the Galt House, was sitting behind the concierge desk. *Id.* Officer Lee asked Scheffler what was going on, and Scheffler responded that

it was "not a police matter." ECF No. 100-2, p. 34. At some point, Officer Lee asked for Scheffler's identification, and Scheffler refused to produce it. *Id.* at 35.

Moments later, the hotel manager came out and shook Scheffler's hand. *Id.* at 35; ECF No. 100-12, 1:08:38. They began having a conversation, at which point Officer Lee began interjecting asking for Scheffler's identification. ECF No. 100-2, p. 35. A back and forth ensued where Officer Lee would ask for Scheffler's identification and Scheffler would respond, "For what charge?" *Id.* Officer Lee then told Scheffler that he would take him to jail if he did not produce his identification. *Id.* at 36. When Scheffler asked Officer Lee whether he was being detained, Officer Lee told him that he was. *Id.*

Scheffler then pulled out his cell phone and called 911. *Id.*; ECF No. 100-12, 1:12:20. He told the dispatcher that he wanted a sheriff to come to the Galt House because he had "a police officer accuse [him] . . . of false accusations" and the officer was "acting like he was detaining [him]." *Id.* at 1:13:17-35. While Scheffler was speaking to the dispatcher, Officer Lee walked up to him and again stated, "I need your ID, sir." *Id.* The dispatcher explained to Scheffler that she could not dispatch a sheriff, but that she could dispatch another police officer to speak with him. *Id.* at 1:13:53-59. Scheffler then walked outside to the front of the hotel. *Id.* at 1:14:33.

Officer Lee followed Scheffler outside while Scheffler was still on the phone with the dispatcher and said, "I need your ID now." *Id.* at 1:14:34. Scheffler responded, "No. For what?" *Id.* at 1:14:36-37. This back and forth repeated three more times. *Id.* at 1:14:38-50. The 911 dispatcher then asked Scheffler if she could speak with the officer at the scene. *Id.* at 1:15:00-04. Scheffler told the dispatcher he would like the conversation to be recorded. *Id.* at 1:15:17-20.

Officer Lee took the phone and told the dispatcher that he was "working off-duty at the Galt House, and [Scheffler did] not believe that [he was] an officer." *Id.* at 1:15:31-34. Scheffler

3

interjected and said, "No . . . I definitely believe he's acting under color of law." *Id.* at 1:15:35-42. Officer Lee then asked Scheffler, "Who are you staying with? That's all I'm asking," and Scheffler responded, "It doesn't matter, I'm standing on public property." *Id.* at 1:15:50-53. Officer Lee informed Scheffler that he was actually standing on private property, and Scheffler responded, "Alright, then I'll walk down here." *Id.* at 1:15:58-1:16:01.

Scheffler began walking down the sidewalk away from the Galt House, and Officer Lee followed behind him. *Id.* at 1:16:02. Officer Lee told Scheffler, "You need to cooperate with me or you're going to jail." *Id.* at 1:16:04-07. When Scheffler asked Officer Lee what he would be charged with, Officer Lee responded, "Alcohol intoxication." *Id.* at 1:16:08-12. Scheffler questioned him on this and Officer Lee stated, "That's what we'll call it – alcohol intoxication. If you do not cooperate, you will be arrested by me. You will go to jail." *Id.* at 1:16:13-22.

As Scheffler continued to walk away from Officer Lee down the sidewalk, Officer Lee grabbed him and pushed him up against a car parked on the street. ECF No. 100-2, p. 40. Scheffler's phone fell to the ground and the call disconnected. *Id.* Officer Lee then placed Scheffler under arrest and escorted him to his patrol car. *Id.*

After sitting in the patrol car for several minutes, Scheffler mumbled, "I'm having a panic attack by the way. I need 911." ECF No. 100-12, 1:26:39. When Officer Lee did not respond, Scheffler calmly stated, "Could I please have you release me? I said I'm having a panic attack." *Id.* at 1:26:50-53. Officer Lee then asked him if he needed to go to the hospital and Scheffler responded, "Yes." *Id.* at 1:26:54-57.

Moments later, Officer Lee began driving away from the Galt House. *Id.* at 1:26:39-43. Officer Lee again asked Scheffler if he "need[ed] to be seen by a doctor" and Scheffler responded, "Yes, please. I feel like I'm having a heart attack." 1:27:57-1:28:04. Upon hearing

4

this, Officer Lee pulled over and radioed for EMS. *Id.* at 1:28:07-16. He then informed Scheffler that EMS was on the way. *Id.* at 1:28:47.

As they waited for EMS to arrive, Scheffler continued to plead with Officer Lee to take him to the hospital. *Id.* at 1:28:50-54. Officer Lee explained that once Scheffler said he was having a heart attack, he was required to call EMS. *Id.* at 1:28:55-1:29:00. Scheffler told Officer Lee that he could not feel his arms and that his handcuffs were fastened too tightly. *Id.* at 1:29:08-30.

EMS arrived on the scene approximately six minutes after Officer Lee's call. *Id.* at 1:34:15. EMT Carroll opened the door of the squad car to speak with Scheffler. *Id.* at 1:36:19-21. Scheffler told EMT Carroll that he was having a panic attack and could not feel his left arm. *Id.* at 1:36:18-30. In response, EMT Carroll told Scheffler that he was hyperventilating and needed to slow down his breathing. *Id.* at 1:36:33-36. After coaching Scheffler to slow his breathing, EMT Carroll checked Scheffler's heart rate and told him it "looked good." *Id.* at 1:37:20-23.

EMT Carroll then asked Scheffler, "So what's going on tonight?" *Id.* at 1:37:33-35. Scheffler told him that he was having a panic attack because Officer Lee arrested him, and that he was agoraphobic. *Id.* at 1:37:26-33. As EMT Carroll continued to question Scheffler, Scheffler began yelling, "Let's go! I want to be under medical supervision!" *Id.* at 1:38:30-39. EMT Carroll told Scheffler that he needed to calm down, to which Scheffler yelled, "I'm having a panic attack!" *Id.* at 1:38:39-1:39:07. EMT Carroll then walked away from the squad car. *Id.* at 1:39:08.

A few minutes later, EMT Stephanie Albertson-Caudill ("EMT Albertson-Caudill") opened the squad car door to speak with Scheffler. *Id.* at 1:41:45-52. She explained to him that they were preparing to take him to the hospital. *Id.* at 1:41:58-1:42:02. He replied, "Just take me

5

to the hospital. What do you need to know?" *Id.* at 1:42:03-06. She told him that they needed to collect his personal information so that he could be admitted to the hospital. *Id.* at 1:42:07-14. Scheffler then began shouting at EMT Albertson-Caudill to take him to the hospital. *Id.* at 1:42:50-1:43:05.

Ten minutes after their arrival on the scene, the EMTs took Scheffler out of the squad car and put him on a stretcher with soft restraints. *Id.* at 1:44:00-10. Scheffler was then placed in the back of the ambulance with EMT Carroll. ECF No. 100-2, p. 53. On the drive, EMT Carroll began taking Scheffler's vital signs. *Id.* During this time, Scheffler had his eyes closed and was not responding to EMT Carroll's directives. *Id.* at 56. As a result, EMT Carroll performed a sternum rub—a technique to test for consciousness—in an attempt to get Scheffler to respond. *Id.* Scheffler then yelled, "Have you ever heard of battery?" *Id.*

When the ambulance arrived at the hospital, the EMTs let Scheffler off the stretcher. *Id.* at 57. He walked into the emergency room and gave his information to the person at the front desk. *Id.* He was assigned a bed right away. *Id.* at 58. On the way to the bed, Officer Lee told Scheffler that he needed to provide him with a urine sample. *Id.* When Scheffler refused, Officer Lee threatened to use a catheter to obtain the sample. *Id.* Once Scheffler arrived at his hospital bed, Officer Lee handcuffed him to it. *Id.*

Hospital personnel brought an EKG machine to check Scheffler's heart. *Id.* at 60. Hospital records indicate that Scheffler did not appear to be in "acute distress" and his "respirations [were] not labored." ECF No. 92-9, p. 1. Later on, Scheffler asked to be released from his bed to use the restroom, and Officer Lee told him that he could not go unless he provided a urine sample. *Id.* at 61. Scheffler then urinated in his hospital bed, despite being provided with a urinal at his bedside. *Id.* Scheffler's treating physician ultimately diagnosed

Scheffler with "acute alcohol intoxication." ECF No. 92-8, p. 2. Upon his discharge from the hospital, Scheffler was taken to the Jefferson County Jail. ECF No. 100-2, p. 73.

Scheffler now brings section 1983 claims against Officer Lee for violations of his First, Fourth and Fourteenth Amendment rights, and state law claims for battery, false imprisonment, and malicious prosecution. He also brings a section 1983 claim against EMT Carroll for violation of his Fourteenth Amendment rights and a state law claim for battery.

III.     Legal Standard

The trial court shall grant summary judgment in a case "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of "demonstrating that [there is] no genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to "point to evidence demonstrating that there *is* a genuine issue of material fact for trial." *Id.* at 323 (emphasis added).

In considering a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There must actually be "evidence on which the jury could reasonably find for the [nonmoving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

IV. Discussion

A. Section 1983 Claims

42 U.S.C. § 1983 provides a cause of action for persons whose federal or constitutional rights have been violated by officials acting under color of state law. However, state officials performing discretionary functions are generally shielded from "liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, to overcome the defense of qualified immunity a plaintiff must demonstrate that (1) a statutory or constitutional right has been violated; and (2) that the right was 'clearly established' at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Scheffler brings claims against Officer Lee and EMT Carroll under section 1983, alleging they violated his constitutional rights while acting under color of state law. Specifically, Scheffler alleges that Officer Lee violated his First Amendment rights to freedom of speech and freedom to petition the government for redress of grievances, his Fourth Amendment rights to freedom from unreasonable searches and seizures, and his Fourteenth Amendment right to due process. He also alleges that EMT Carroll violated his Fourteenth Amendment right to due process. These claims will be addressed in turn below.

  i. First Amendment Violations by Officer Lee

First, Scheffler alleges that Officer Lee violated his First Amendment rights to freedom of speech and freedom to redress the government for grievances by "intentionally frustrating a 911 dispatch of a supervisor initiated at [Scheffler's] request" and subsequently arresting Scheffler. Pl. Amended Complaint, ECF No. 35, ¶ 277. This claim was previously dismissed by this court for failure to state a claim on which relief can be granted. Pl. Complaint, ECF No. 1,

21-22; ECF No. 7. Scheffler subsequently filed an amended complaint without seeking leave from the court and included an identical First Amendment claim. Pl. Amended Complaint, ECF No. 35. Scheffler does not allege any additional facts to support the claim. ECF No. 35. Therefore, Scheffler's First Amendment claim fails as a matter of law.

    ii.    <u>Fourth Amendment Violations By Officer Lee</u>

Second, Scheffler alleges that Officer Lee violated his Fourth Amendment rights to freedom from unreasonable searches and seizures when he (i) arrested him without probable cause, and (ii) used excessive force in effectuating his arrest.

    i.    <u>Unlawful Arrest</u>

Scheffler claims that Officer Lee violated his Fourth Amendment rights by arresting him without probable cause. Probable cause exists "where the facts and circumstances within [the officer's] knowledge, and of which he has reasonably trustworthy information, [are] sufficient in themselves to warrant a belief by a man of reasonable caution that a crime is being committed." *Brinegar v. U.S.*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The uniform citation filed by Officer Lee at the time of Scheffler's arrest indicates that Scheffler was arrested for alcohol intoxication in a public place[1] and disorderly conduct in the second degree.[2] ECF No. 92-9.

Officer Lee had probable cause to arrest Scheffler. Although Scheffler claims that he was not intoxicated at the time of his arrest, a reasonable officer would have concluded that he was. Officer Lee, the hotel manager, and a hotel security guard, all of whom were present at the time

---

[1] A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to a degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity. KRS §222.202(1).

[2] A person is guilty of disorderly conduct when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he: (a) [e]ngages in fighting or violent, tumultuous, or threatening behavior; (b) [m]akes unreasonable noise; (c) [r]efuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or (d) [c]reates a hazardous or physically offensive condition by any act that serves no legitimate purpose. KRS § 525.060.

9

of Scheffler's arrest, made sworn statements that Scheffler appeared to be under the influence of alcohol. ECF No. 92-4, p. 3 (Officer Lee stated that he believed Scheffler was "under the influence of alcohol"); ECF No. 92-11, p. 2 (the hotel manager indicated that he believed Scheffler was intoxicated because of "his speech [and because] his eyes were . . . red"), ECF No. 92-3 (the security guard stated that Scheffler was "stumbling around . . . and his speech was slightly slurred"). These statements are corroborated by Scheffler's medical record from his hospital stay later that evening. The nursing progress notes state that Scheffler was "angry [and] yelling at staff." ECF No. 92-9, p. 1. He also "refus[ed] to give a urine sample," and although he "was given a urinal just in case," he urinated in his hospital bed. *Id.* at 4. Scheffler's treating physician ultimately diagnosed him with "acute alcohol intoxication." *Id.* at 6.

Moreover, a reasonable officer would have concluded that Scheffler was a danger to other persons or property, or was unreasonably annoying persons in his vicinity. Scheffler was on the Galt House premises, but refused to cooperate with hotel staff by providing his identification or the name of the person he was staying with. ECF No. 100-2, p. 35-36. Scheffler then walked away from Officer Lee after he was informed that he was being detained. *Id.* At 38-39. Scheffler continued walking away from Officer Lee and making combative statements until the time he was arrested. *Id.* At 39-40. Based on these facts, Officer Lee had probable cause to arrest Scheffler for alcohol intoxication. It is therefore unnecessary to determine whether Officer Lee also had probable cause to arrest Scheffler for disorderly conduct. *See Davenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Scheffler's claim that Officer Lee unlawfully arrested him fails as a matter of law.

ii. Excessive Use of Force

Scheffler also claims that Officer Lee violated his Fourth Amendment rights by using excessive force in effectuating his arrest. Specifically, he claims that Officer Lee "threw him against a car" and put him in "handcuffs that were overly tightened." Pl. Amended Complaint, ECF No. 35, ¶¶ 74-75. In determining whether the amount of force used by an officer in a particular seizure violates the Fourth Amendment, the court must balance "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). An officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion," but this right is "not a license to inflict gratuitous violence." *Id.* at 8; *Folks v. Petitt*, 676 Fed. Appx. 567, 570 (6th Cir. 2017) (citation omitted).

1. Use of Car in Making Arrest

Scheffler claims that Officer Lee used excessive force in placing him under arrest when he "threw him against a car." Pl. Amended Complaint, ECF No. 35, ¶ 74. In *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court identified three factors to be considered in analyzing whether an officer used excessive force: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. These factors should be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Based on the totality of the circumstances, Officer Lee did not use excessive force in putting Scheffler against the car. Although Scheffler was arrested on relatively minor charges

11

and did not pose an obvious threat to those around him, a reasonable officer would have considered him to be a flight risk. Scheffler admits that he continued to walk away from Officer Lee after he was told that he was being detained. ECF No. 100-2, pp. 39-40. Further, Officer Lee explicitly told Scheffler as he followed him down the sidewalk that if he "did not cooperate . . . [he would] go to jail." ECF No. 100-12, 1:16:04-07. This is consistent with Officer Lee's statement that he followed Scheffler down the sidewalk and ultimately "grabbed him and put him against the car," using "the car as leverage so [Scheffler] wouldn't fall to the ground." ECF No. 92-4, p. 3. Notably, Scheffler does not allege that he suffered any injuries as a result of being put against the vehicle. Based on these circumstances, Officer Lee did not use excessive force in putting Scheffler against the car while placing him under arrest.

### 2. Tightness of Handcuffs

Scheffler also claims that Officer Lee used excessive force in arresting him when he overtightened his handcuffs. Pl. Amended Complaint, ECF No. 35, ¶ 75. To survive a motion for summary judgment on an excessively forceful handcuffing claim, "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; [and] (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (5th Cir. 2005)).

Scheffler fails to allege that he suffered any physical injury as a result of his handcuffs being applied too tightly. Moreover, Officer Lee stated in a sworn statement that he "placed two fingers in both cuffs to make sure [Scheffler] had plenty of room" when he put the handcuffs on. ECF No. 92-4, p. 3. Based on this, Officer Lee did not use excessive force in placing Scheffler in

handcuffs. Scheffler's claim that Officer Lee violated his Fourth Amendment rights by using excessive force in effectuating his arrest fails as a matter of law.

      iii.    <u>Fourteenth Amendment Violations By Officer Lee and EMT Carroll</u>

Third, Scheffler alleges that both Officer Lee and EMT Carroll violated his Fourteenth Amendment right to due process by maliciously prosecuting him. In *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001), the Sixth Circuit stated that "the substantive component of the Fourteenth Amendment's Due Process Clause, 'with its scarce and open-ended guideposts,' may not serve as the basis for a § 1983 malicious prosecution claim." *Id.* at 308 (citing *Albright v. Oliver*, 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). Rather, "[t]he right to be free from malicious prosecution 'must be asserted according to the Fourth Amendment.'" *Johnson v. Ward*, 43 Fed. Appx. 779, 782 (6th Cir. 2002) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999)). Therefore, Scheffler's claim that Officer Lee and EMT Carroll violated his Fourteenth Amendment right to due process by maliciously prosecuting him fails as a matter of law.

Even if Scheffler brought this claim under the Fourth Amendment, it would still fail. In order to bring a malicious prosecution claim under section 1983 premised on a violation of the Fourth Amendment, a plaintiff must prove that: (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute;" (2) "there was a lack of probable cause for the criminal prosecution;" and (3) "as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (citations omitted).

Scheffler's claim against Officer Lee for malicious prosecution fails because, as stated above, Officer Lee had probable cause to arrest Scheffler. Scheffler's claim against EMT Carroll

13

also fails because EMT Carroll did not influence or participate in the decision to prosecute Scheffler. EMT Carroll arrived on the scene *after* Scheffler had already been arrested. ECF No. 100-12, 1:24:15. Further, EMT Carroll was only present to provide medical treatment, which Scheffler had requested. *Id.* at 1:38:30-39. For these reasons, Scheffler's claim that Officer Lee and EMT Carroll maliciously prosecuted him fails as a matter of law.

B. State Law Claims

In addition to bringing claims against Officer Lee and EMT Carroll under section 1983, Scheffler also brings several state law claims against them. Kentucky law parallels federal law in providing qualified immunity to public officers and employees for "good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). In order to overcome the defense of qualified immunity, a plaintiff must demonstrate that "a peace officer acted in bad faith when making an on-the-spot judgment call" and that the "officer knew or reasonably should have known that the action he took within the sphere of his official responsibility would violate the complainant's rights or that the officer took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . ." *Id.* at 523.

Scheffler brings claims against Officer Lee for battery, false imprisonment, and malicious prosecution. He also brings a claim against EMT Carroll for battery. These claims are addressed below.

    i.    Battery Against Officer Lee and EMT Carroll

First, Scheffler alleges that both Officer Lee and EMT Carroll committed battery against him. Battery is defined as "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000). Contact is considered 'unlawful' if it occurs without consent. *Brown v.*

*Fournier*, 2017 WL 2391709, *5 (Ky. App. June 2, 2017). Consent may be either express or implied based on the circumstances. *Hoofnel v. Segal*, 199 S.W.3d 147, 149 (Ky. 2006). There is an exception to the consent requirement for "emergency or life threatening situation[s]." *Id.*

      i. Officer Lee

Scheffler claims that Officer Lee battered him when he "threw him against a car" in the course of arresting him. Pl. Amended Complaint, ECF No. 35, ¶ 74. Under Kentucky law, "an officer is not liable for assault or battery if, in the course of making a lawful arrest, the officer used such physical force as was necessary . . . to effect the arrest but no more." *Mulcahy v. Tennessee Valley Authority*, 2010 WL 1417794, 6 (W.D. Ky. 2010) (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)). As previously stated, Officer Lee lawfully arrested Scheffler, and did not use excessive force in putting him against the car or handcuffing him. Therefore, Scheffler's claim that Officer Lee battered him fails as a matter of law.

      ii. EMT Carroll

Scheffler also claims that EMT Carroll battered him when he performed a sternum rub on him in the back of the ambulance. Pl. Amended Complaint, ECF No. 35, ¶ 115. A sternum rub is a technique used by EMTs and other medical providers to test for consciousness whereby the individual makes a fist and presses it down on the patient's sternum. The technique will rouse a conscious or semi-conscious patient.

EMT Carroll did not unlawfully touch Scheffler in applying the sternum rub. Scheffler expressly consented to medical assistance when he asked to be taken to the hospital in the ambulance. ECF No. 100-12, 1:42:03-06. There is no evidence that Scheffler ever instructed EMT Carroll to discontinue medical assistance. Further, even if Scheffler did not specifically consent to the sternum rub, EMT Carroll's use of this technique falls under the medical necessity

exception to consent, as it was unclear whether Scheffler had lost consciousness. ECF No. 92-6, p. 3. Therefore, Scheffler's claim that EMT Carroll battered him fails as a matter of law.

  ii. <u>False Imprisonment Against Lee</u>

Second, Scheffler alleges that Officer Lee falsely imprisoned him. False imprisonment is defined as "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against [his] will, whether done by actual violence, threats or otherwise." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. App. 2001). To qualify as false imprisonment, the restraint must be "wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Id.* As previously stated, Officer Lee's arrest of Scheffler was not wrongful, as it was based on probable cause. Thus, Scheffler's claim that Officer Lee falsely imprisoned him fails as a matter of law.

  iii. <u>Malicious Prosecution Against Lee</u>

Third, Scheffler alleges that Officer Lee maliciously prosecuted him. A malicious prosecution claim exists where a defendant initiates a criminal proceeding against a plaintiff without probable cause and acting with malice, the proceeding is terminated in favor of the plaintiff, and the plaintiff suffers damages as a result. *Martin v. O'Daniel*, 507 S.W.3d 1, *11 (Ky. 2016). Again, as explained above, Officer Lee had probable cause to arrest Scheffler. Based on this, Scheffler's claim that Officer Lee maliciously prosecuted him fails as a matter of law.

### V. Conclusion

For these reasons, the court will grant Officer Lee and EMT Carroll's motion for summary judgment. An order will be entered in accordance with this memorandum.

December 14, 2017

            **Charles R. Simpson III, Senior Judge**
            **United States District Court**